UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ELLIS D. FORD,

     Petitioner,

v.                                Case No. 5:19cv321-TKW-HTC

MARK INCH,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Ellis D. Ford, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 challenging his conviction in the circuit court of Washington County, Florida, 2013-CF-260. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the State's response (ECF Doc. 8), and Petitioner's Reply (ECF Doc. 10), the undersigned recommends the Petition be DENIED without an evidentiary hearing.

## I.  BACKGROUND

### A.  Offense and Conviction

Petitioner was convicted after a jury trial of burglary of a dwelling and theft involving between $300 and $5,000 of fishing rods and reels, a pressure washer, and

a chainsaw from a carport in Washington County, Florida.  ECF Doc. 1 (Petition) &
ECF Doc. 8-1 at 42 (Jury verdict).  The evidence presented at trial shows as follows:

On June 27, 2013, a homeowner in Washington County reported to police his
carport had been burglarized and his home security system had videotaped the two
burglars.  ECF Doc. 8-6 at 139 (victim's trial testimony).[1]  The video showed a light-
colored van drove up and parked and shortly thereafter a tall man entered the carport.
*Id.* at 140.  The man knocked on the door, waited a moment, then nodded to a second
man, who then came into the carport and took a pressure washer and later a chainsaw.
The tall man grabbed several expensive saltwater fishing rods and reels and ran back
to the vehicle, and the vehicle quickly drove away.  *Id.*

Neither the homeowner nor the police who viewed the videotape recognized
the two men.  Police investigators contacted local pawn shops and second-hand
dealers looking for a very tall individual who drove a silver or light-colored van and
was trying to sell a chainsaw, rods and reels or a pressure washer.  *Id.* at 188-90.
Ronnie Finch, owner of Ronnie B. Good's, a second-hand store, identified Petitioner
as having brought some items to sell on June 29, 2013.  *Id.* at 157.  Finch told police
that a light-colored van drove up and a very tall individual inside tried to sell him a
chainsaw, which he bought, and saltwater rods and reels, which Finch did not buy

---

[1] The transcript of the May 28, 2014 one-day trial before Judge Patterson begins at ECF Doc. 8-6
at 123.

because he already had many for sale.  ECF Doc. 8-6 at 143-44 and 165-66.  Finch produced a receipt which identified the seller as Ellis Ford.[2]  *Id.* at 157-59.

Police compared pictures of Petitioner they obtained from various databases to the individual in the videotape from the crime scene and confirmed it was the same person.  *Id.* at 190.  Investigators then searched for Petitioner and found him, with his stepson David Whitley, in South Carolina.  *Id.* at 192.  Petitioner was arrested and charged with burglary of a dwelling and theft involving between $300 and $5,000.  ECF Doc. 8-1 at 16 (Information).

Ford's defense at trial was that he was fooled into committing the burglary by a man named Timothy Gathright whom he and Whitley met at a local motel.  ECF Doc. 8-6 at 84 (trial testimony of David Whitley).  Whitley testified he overheard a conversation between Ford and Gathright in which Gathright offered Petitioner $50 dollars to take him to his in-laws' house to pick up some of his merchandise.  *Id.* at 244-45.  According to Whitley, Gathright told Ford Gathright and his wife had restraining orders against each other, so he needed to make sure she was not home when they got there.  *Id.* at 245.

Petitioner and Gathright left the motel for a while, and, when they returned, Whitley saw them unload a pressure washer and fishing poles, which Gathright took to his room.  Whitley also saw Gathright hand Ford some cash.  *Id.* at 246.  Whitley

---

[2] At trial, Finch testified and identified Petitioner in court.  *Id.* at 159.

claimed on cross-examination he did not see the men with a chainsaw at the motel, *id.* at 246, and further testified he went with Petitioner to Ronnie B. Good's and the chainsaw Petitioner sold was from Petitioner's daughter's house. *Id.*

At the conclusion of the one-day trial, the jury found Petitioner guilty and the court subsequently sentenced to 10 years for burglary of a dwelling to run concurrently with 5 years for theft of property valued between $300 and $5,000. ECF Doc. 8-1 at 86.

### B.    Postconviction Procedural History and Timeliness

Petitioner appealed the judgment and sentence to the First District Court of Appeal ("First DCA"), which affirmed *per curiam* and without a written opinion on August 12, 2015, in Case No. 1D14-3559.  ECF Doc. 8-4 at 4.  On November 9, 2015, Petitioner filed a motion to correct illegal sentence which was sent to Walton Correctional Institute prison officials.  ECF Doc. 8-5 at 18.  That motion was continuously pending until the state court dismissed the motion without prejudice on December 21, 2015.  ECF Doc. 8-5 at 61.

On March 15, 2016[3], Petitioner filed a post-state motion under Florida Rule 3.850 by delivering it to prison mail officials on March 15, 2016.  ECF Doc. 8-5 at 64.  The state circuit court held an evidentiary hearing on September 14, 2017, and

---

[3] Respondent identifies the date the motion was filed as March 16, 2016.  That is incorrect.  Ellis states the motion was delivered to prison officials on March 15, and the motion contains a stamp indicating it was received by prison officials on March 15.  ECF Doc. 8-5 at 64, 100.

Petitioner and his counsel testified at that hearing.  ECF Doc. 8-7.  That motion was continuously pending, through two amendments and an appeal, until the First DCA affirmed the denial of the second amended 3.850 motion without written opinion on April 11, 2019, ECF Doc. 8-10 at 3, and issued the mandate on May 24, 2019.  *Id.* at 2.

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a § 2254 petition must be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[4]  For purposes of the AEDPA, Petitioner's conviction became final on Tuesday, November 10, 2015.  *See Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004) (holding that Florida prisoner's conviction became "final" for AEDPA purposes on date the 90–day period for seeking certiorari review in Supreme Court expired).  Because Petitioned filed a motion to correct illegal sentence one day prior, that motion tolled the AEDPA clock until December 21, 2015, when the motion was denied.

The clock ran for 84 days until it was tolled again by the filing of the 3.850 motion on March 16, 2019.  The clock was tolled until May 24, 2019, and ran the

---

[4] Although there are other "trigger" dates under the AEDPA, none of those apply here.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D)

following day for another 90 days, when Petitioner delivered the federal petition to prison mail officials on August 23, 2019. ECF Doc. 1 at 29. Because only 174 days had run off the AEDPA clock at the time Petitioner filed the instant petition, it is timely.

## II.    LEGAL STANDARDS

### A.    Standard of Review Under the AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under that act, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued

its decision. *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Also, because the First DCA affirmed the state court's denial of the Rule 3.850 motion without a written opinion, this Court should "look through" the unexplained decision of the First DCA to the circuit court's explanation -- the last related state-court decision that does provide a relevant rationale. The Court should then presume that the unexplained decision adopted the same reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

## B.   Ineffective Assistant of Trial Counsel Claims

All of Petitioner's grounds are premised on ineffective assistance of trial counsel ("IATC").   An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists

that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.    DISCUSSION

Petitioner raises four claims of ineffective assistance of trial counsel ("IATC"): (1) IATC for failure to investigate, locate and call as a witness Timothy Gathright; (2) IATC for failure to strike two potential jurors (only partially raised in state court, as explained below); (3) IATC for advice leading to rejection of 30-

month plea deal; and (4) IATC for advice leading to Petitioner not testifying (not raised is state court). ECF Doc. 1. For the reasons which follow, the undersigned finds that these grounds either fail on the merits or are procedurally defaulted.

### A.    Ground One: Ineffective Assistance of Trial Counsel ("IATC") for Failing to Investigate, Locate and Call as a Witness Timothy Gathright

Petitioner argues trial counsel was deficient for not attempting to locate Gathright or call Gathright as a witness. Petitioner argues Gathright "was crucial to the 'good faith' defense whereby petitioner argued that since he had no intent to steal these items, as he was misled by Gathright as to ownership, he could not be guilty of burglary and theft both requiring the intent element." ECF Doc. 1 at 5. He claims counsel took no steps to locate Gathright and Petitioner, from prison, was able to locate Gathright in Valdosta. ECF Doc. 8-6 at 105.

Petitioner exhausted this claim by presenting it in his second amended 3.850 motion, which was denied in writing by the circuit court.[5] ECF Doc. 8 at 17; ECF Doc. 8-6 at 101. The state circuit court denied relief on this claim for three reasons. First, the court found the other evidence in the case did not support the defense. Namely, the evidence showed Petitioner "knocked on the victim's door, tried the

---

[5] The state circuit court denied the second amended 3.850 motion in two separate written orders. First, on April 6, 2017, Judge Register issued a written order denying grounds three and four, the IATC claims dealing with prospective jurors, and setting grounds one and two for an evidentiary hearing. ECF Doc. 8-5 at 235. Judge Register denied grounds one and two in a written order on December 7, 2017, after holding an evidentiary hearing on those issues. ECF Doc. 8-6 at 101.

victim's door knob and was checking to see if anybody was home before grabbing the rods and reels while the second suspect was rushing around grabbing the other items as quickly as possible to avoid detection," and "Defendant sold or tried to sell all the items after Mr. Gathright had allegedly already paid Defendant."  ECF Doc. 8-6 at 103.

Second, the state circuit court found Petitioner had not presented evidence counsel could have located Gathright based on the limited information available to counsel, which did not include Gathright's date of birth or his whereabouts.  Instead, the last time Petitioner had seen Gathright before trial was almost a year earlier, and the Valdosta address was from two years ago.  *Id.* at 105.

Third, Petitioner had not shown Gathright would offer helpful testimony.  Specifically, "Defendant testified that he cannot say that Timothy Gathright would have fallen on his sword for the Defendant in this case.  Thus, Defendant is not sure that Mr. Gathright would have testified to the facts, he could have lied."  ECF Doc. 8-6 at 105; *see* ECF Doc. 8-7 at 30-31 (Petitioner's testimony at evidentiary hearing: "Well, I'm not going to say he'd testify to that because he lied to me about going there. . . . I can't say that he would testify to that, he could've lied.").  Likewise, counsel testified he felt Gathright may have taken the Fifth Amendment and refused to testify.  ECF Doc. 8-6 at 105; *see* ECF Doc. 8-7 at 39-40 (Counsel's testimony at evidentiary hearing: "I don't know if he would have testified if we were able to locate

him because he would be implicating himself as much as Mr. Ford would have been implicated, so.  He may have just taken the Fifth and said I refuse to testify.").

Also, counsel noted that Gathright would have credibility issues, since at best he was at the home in apparent violation of a restraining order.  ECF Doc. 8-6 at 105; ECF Doc. 8-7 at 50.  Finally, the state court pointed to counsel's testimony that the best strategy to establish the good faith defense was through the testimony of Whitley.  ECF Doc. 8-6 at 105.

The state court's determination was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that federal courts will seldom, if ever, second guess."  *Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995)).

To allege a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, the movant must state: (1) the identity of the witness; (2) the substance of the witness's testimony; (3) how the omission of this testimony prejudiced the outcome of the case; and (4) that the witness was available to testify at trial.  *Haag v. Sec'y, Dep't of Corr.*, No. 8:14-CV-1794-T-35AEP, 2017 WL

6550884, at *9 (M.D. Fla. Sept. 25, 2017).  Petitioner's allegations, however, fall short of a facially sufficient claim.

As the state court found, Petitioner had not provided sufficient information to counsel to locate the witness.  Also, Petitioner did not identify the substance of Gathright's testimony and, to the contrary, admitted he does not know how Gathright would testify.  Petitioner and counsel also admitted Gathright's testimony may not have been helpful to Petitioner's case.  Given those uncertainties, counsel was not deficient in deciding to have Whitley testify regarding Gathright's involvement rather than calling Gathright to testify.  Indeed, "second-guessing of an attorney's performance is not permitted," *White*, 972 F.2d at 1220, and this Court is to give "substantial deference" to counsel's strategic decisions.  *Arvelo v. Sec'y, Fla. Dep't. of Corr.*, 788 F.3d 1345, 1349 (11th Cir. 2015).

Petitioner has also not shown he was prejudiced by counsel's conduct, even if deficient, because, as stated above, Whitley testified about Gathright's involvement, and the jury, nonetheless, found Petitioner guilty.  Thus, Petitioner has not shown a reasonable probability of a different outcome even had Gathright testified.  *See Strickland,* 466 U.S. at 694.  Petitioner is, thus, not entitled to habeas relief on Ground One.

**B.     Ground Two: IATC for Failing to Strike Two Jurors Based on Their Comments During Voir Dire**

Petitioner claims counsel was ineffective for failing to strike jurors Dawn Brown and Patti Seal based upon their statements during *voir dire*.  As discussed below, however, Petitioner has not exhausted this claim as to Juror Seal.

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law.  Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  *Pope v. Sec'y for Dep't. of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010)).  A petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Petitioner failed to present this issue as to Juror Seal on appeal of the order denying his second amended 3.850 motion.  Indeed, the header for Ground Three in the initial brief was "Defense counsel was prejudicially ineffective for failing to strike juror Dawn Brown either for cause or peremptorily."  ECF Doc. 8-8 at 13. Petitioner does not mention Seal at all in his appellate brief.  *Id.*

A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).
Because Petitioner did not raise the issue of Juror Seal on appeal of the denial of the
3.850 motion, this claim was not exhausted in state court. *See Baker v. Dep't of
Corr., Sec'y*, 634 F. App'x 689, 692 (11th Cir. 2015) (finding double jeopardy claim
was not exhausted in state court because Baker abandoned it on appeal of his 3.850
motion's denial and, thus, did not raise the claim throughout one round of Florida's
established appellate review process).

Also, this claim is procedurally defaulted because Petitioner cannot now
return to state court and exhaust this claim.  An issue that was not properly presented
to the state court and which can no longer be litigated under state procedural rules is
considered procedurally defaulted, that is, procedurally barred from federal review.
*See O'Sullivan v. Boerckel,* 526 U.S. 838, 839-40, 48 (1999); *Bailey v. Nagle*, 172
F.3d 1299, 1302–03 (11th Cir. 1999).

A petitioner may obtain federal habeas review of a procedurally defaulted
claim only upon a showing of cause and prejudice or that review is necessary to
correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446,
451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986).  To show prejudice, a
petitioner must demonstrate not only that an error at the trial created the possibility
of prejudice but that the error worked to his actual and substantial disadvantage and
infected the entire trial with error of constitutional dimension.  *United States v.*

*Frady*, 456 U.S. 152 (1982).  In other words, a petitioner must show at least a reasonable probability of a different outcome.  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Likewise, a fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the "fundamental miscarriage of justice" exception, Petitioner must show constitutional error coupled with "new reliable evidence — whether...exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

In his Reply, Petitioner argues he is "actually innocent" of the crimes because he did not have the intent necessary to commit burglary.  ECF Doc. 10 at 3-55.  Petitioner also argues the "new evidence" of this is his testimony, which he contends counsel prevented him from giving.  *Id.* at 4.  As discussed below in Subsection D, *infra,* however, Petitioner's claim of actual innocence is unsupported.  Petitioner is, thus, not entitled to relief as to his claim of IATC for not striking Juror Seal.

As to Juror Brown, where there is no exhaustion issue, Petitioner argues counsel should have struck Juror Brown because she admitted during voir dire that "I'm not so sure that I should serve as a juror because I'm taking a controlled

substance, and I want to make sure that I would be able to make the best decision possible." ECF Doc. 8-8 at 28. In denying this ground for relief, the circuit court relied upon Florida's rule that to show prejudice from a failure to peremptorily strike a juror, the defendant must show "actual bias." Under that standard, "the defendant must demonstrate that the juror in question was not impartial – i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." ECF Doc. 8-5 at 238 (citing *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007)). The state circuit court found that defendant "cannot meet the high burden set forth above." ECF Doc. 8-5 at 238.

This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). A criminal defendant has a right to an impartial jury, and a prospective juror who lacks impartiality must be excused for cause. *See Ross v. Oklahoma*, 487 U.S. 81, 85–86, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988). To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited **actual bias** by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993) (emphasis added); *see also Smith v. Phillips*, 455 U.S. 209, 215 (1982). The burden

is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

Petitioner complains only about "potential prejudice" in his petition and does not specify Juror Brown's performance was affected by her medications. As stated above, Juror Brown did not indicate that she could not be unbiased; instead she stated she was "*not so sure*" she should serve as a juror" and suggested her medication "*may* cloud her judgment." ECF Doc. 8-6 at 28 (emphasis added). "This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)); *see also*, *Jones v. Chatman*, 2019 WL 4795682, at *48 (S.D. Ga. Sept. 30, 2019) ("Petitioner has not offered any evidence or further argument that he is entitled to relief because he was allegedly tried and convicted by a jury that included a potentially mentally incompetent juror."). Plaintiff is not entitled to habeas relief on Ground Two.[6]

## C.    Ground Three: IATC During Plea Negotiations

Before trial, on November 13, 2013, trial counsel communicated to Petitioner a plea offer of 30 months' imprisonment. ECF Doc. 8-7 at17. Petitioner claims he

---

[6] Even were the Court to consider this claim as to Juror Seal on the merits, it would likewise fail for lack of a showing of actual prejudice. As the Respondent points out, even though Juror Seal initially stated she might be more likely to believe an officer than an ordinary citizen because "[t]he uniform persuades me a little," on examination by counsel, Juror Seal clarified she does not believe she has to believe what the police says simply because they are the police because "they're human." ECF Doc. 8 at 28.

rejected the offer (1) based on counsel's inaccurate promise he could not be convicted of burglary of a dwelling because he only entered the carport and not the actual building, ECF Doc. 1 at 8; ECF Doc. 8-7 at 20-21; and (2) not knowing he could be sentenced as a habitual offender. ECF Doc. 8-7 at 18.

Petitioner exhausted this claim by presenting it in his second amended 3.850 motion. ECF Doc. 8 at 17; ECF Doc. 8-6 at 101. The circuit court denied relief on this ground under *Strickland*. *Strickland* applies to ineffective assistance of counsel claims arising out of the plea process, including to the negotiation and consideration of pleas that are rejected or lapse. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). "Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). This obligation includes informing a client about formal plea offers presented by the government and correctly advise a client about such offers. Failure to do so is ineffective assistance of counsel. *See Missouri v. Frye*, 566 U.S. 134, 144-45 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of

intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley*, 751 F.3d at 1222 (quoting *Lafler*, 566 U.S. at 164).   However, "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835.

The state circuit court found, however, there was no evidence Petitioner would have accepted the plea regardless of the advice given him.   In making this determination, the state court relied on testimony from counsel.   According to counsel, Defendant was "adamant" about not accepting any plea which included state prison.   ECF Doc. 8-6 at 106.   Counsel testified Defendant "was not interested in prison," and responded "no thanks" to the offer.   *Id.*   Petitioner also testified on cross-examination he "wanted anything besides going to DOC.   If he could get it." *Id.* at 105.   Counsel also testified he discussed with Petitioner the issue of whether the State could prove the carport was part of a dwelling and gave Petitioner no guarantees of success.   *Id.* at 105-06.   Crediting counsel's testimony, the state court found "counsel had in every sense of the word prepared the Defendant for the worst, especially if he qualified for sentencing enhancement."   *Id.* at 106.

This state court's denial of relief was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  After hearing all of the testimony, the trial court made a credibility determination, essentially finding counsel's testimony to be more credible and persuasive.  "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'"  *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)), *cert. denied*, 568 U.S. 849 (2012)).  Because Petitioner must rebut with clear and convincing evidence the presumed correctness of the court's finding that he would not have accepted the plea regardless of advice given, and has not, he is not entitled to habeas relief on this claim.

### D.   Ground Four: IATC for Advising Petitioner Not to Testify at Trial

Petitioner argues for the first time in his federal habeas petition that counsel was deficient in advising Petitioner to waive his right to testify at his trial.  Doc. 1 at 11.  He states he did not testify because counsel told him if he testified the jury would view him as a "confused old man" and find his testimony not credible.  *Id.*  Petitioner argues this advice was "ludicrous" since the theory of the defense was that Petitioner was tricked into committing a burglary and, therefore, the jury finding him a

"confused old man" would actually play into his defense that he had been tricked. *Id.*

Respondent argues Petitioner has not exhausted his state remedies before bringing this §2254 action and this claim is now procedurally barred.  ECF Doc. 8 at 35.  In his Reply, Petitioner argues this claim should be considered because he is "asserting actual innocence and, hopefully, hurdling a procedural bar by so doing." ECF Doc. 10 at 4.  The undersigned finds, however, that Petitioner has not provided any specific facts to support a claim of actual innocence.

A claim that has not been exhausted is procedurally defaulted if a petitioner is time-barred from returning to state court and exhausting the claim.  That is the case here because a Rule 3.850 motion must be filed within two years after a "judgment and sentence become final".  *See* Fla. R. Crim. P. 3.850(b).  Procedural default can be overcome by a credible showing by the petitioner that he is actually innocent.  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1932 (2013).  To establish actual innocence, a petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Petitioner cannot meet that standard here.

Petitioner argues his testimony would have supported his defense that he had been tricked into burglarizing the carport by Gathright.  ECF Doc. 1 at 10.  However, that was exactly what jurors heard from Whitley.  Petitioner's testimony, thus, would

merely have been cumulative. Moreover, Petitioner's testimony would not have been sufficient to overcome the other evidence in the case. As the state court explained with regard to Ground One, "the evidence, in particular, the video, clearly did not support this 'good faith' theory." ECF Doc. 8-6 at 103. Therefore, Petitioner cannot show that if he had testified "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Petitioner is not entitled to relief as to Ground Four.

## IV.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must consider the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Ford*, 2013-CF-260, in Washington County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.   That a certificate of appealability be DENIED.

3.   That the clerk be directed to close the file.

Done at Pensacola, Florida, this 1st day of July, 2021.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.